## A. S. JOHNSTON v. ELBERT A. SMITH AND ANOTHER.

It is settled by this Court that neither settlement nor the consent of the Federal Executive of Mexico is necessary to the validity of a grant made by the Special Commissioners under the 32nd Article of the law of the 26th March, 1834.

The grantee of land was permitted by the 36th Article of the law of 1834 to sell the land at any time after obtaining title, and no subsequent act of his could affect the title of his vendee, who held it independently of him, and subject only to the charge of fulfilling the duty of the grantee to the State, in his own person.

If the grantee abandoned the country before selling the land he thereby lost his right to it.

A *bona fide* purchaser of a title issued by competent authority in the forms of law, and valid upon its face, must be deemed to have a good title until the vice or defect which will have the effect to annul it, appears.

The fact that the grantee had not introduced his family, and that he left the country after obtaining the grant, is not evidence of fraud to authorize the annulling of the grant.

The intention of the grantee, to have any influence on the validity of his grant, must be the intention he conceived at the time he obtained it ; and what he did or intended afterwards could only be material as conducing to show the state of his mind at that time.

It seems that the subsequent conduct of a grantee cannot be received to impeach a grant regularly issued by competent authority in the hands of a purchaser.

The issue of a grant precludes inquiry as to the merits and qualification of the grantee.

No case in this Court has decided whether parol evidence is to be received at any distance of time to impeach a grant or patent regularly issued by competent authority, and in the hands of an innocent *bona fide* purchaser, on the grounds that such grant or patent was obtained by the grantee upon false and fraudulent representations made to the officers of Government.

The Government may take measures to annul a grant obtained by fraud.

Considerations of public policy and justice may not forbid the admission of parol evidence to impeach a grant upon such grounds while the grant remains in the hands of the original grantee ; if the assault upon the title be not too long delayed until the holder has lost the original evidence of his right.

* Appeal from Harrison.   Tried below before Hon. W. W. Morris.

Action of trespass to try title.

It was admitted on the trial that the appellant had a regular chain of title to the land in controversy from the grantee ; that he purchased in good faith and for a valuable consideration in the year 1840 ; that he was then a citizen of Texas and has so continued ; that defendants were in possession of a part of the land sued for.

It was admitted by the appellant that the land in controversy was situated within the twenty border leagues ; that the grantee of said land was a native of Louisiana or Tennessee, and came to Texas in 1835 ; that he did not introduce his family into the country and that he did not remain here longer than three weeks, and then returned to the United States ; and that he has never been in the country as a citizen since that time ; and that he and those who claim under him have never taken possession of said land, or cultivated it.   After these admissions the appellant introduced in evidence a title executed by George W. Smyth, Special Commissioner to Samuel Monday, under who he claimed and closed.

The appellee then introduced a headright certificate admitted to be genuine and the property of said appellee, and a survey by virtue of it made on said land, or a portion of it, admitted to be regular.

The Judge charged the jury, 1st.  "That a purchaser for a valuable consideration, and without notice of fraud in the obtaining of a grant by a grantee, was in no better position in an action to try title to maintain the same than such fraudulent grantee."   2nd.  "That it devolved on the plaintiff to prove that the consent of the Supreme Executive of Mexico had been given to the issuance of said grant offered and read

---

* The judgment appealed from in this case was entered before Judge Morris, but the cause was tried and ruling made by Hon. L. D. Evans.

to the jury, and it afforded no evidence that such consent had been obtained." To which appellant excepted.

There was a verdict and judgment for appellee.

*Clough & Lane*, for appellant.

*Henderson & Jones*, for appellee.

WHEELER, J. The grounds on which the defendants, by their answer, sought to impeach the validity of the grant, under which the plaintiff claims, were, 1st. That the grantee did not enter upon and cultivate the land within six years, and that he abandoned the country before the expiration of that period. 2nd. That the consent of the Executive of New Mexico was not obtained to the making of the grant, the land lying within the border leagues.

The grant, under which the plaintiff claims, was issued by the Commissioner Smyth, under the 32nd Article of the Law of the 26th of March, 1834; and the decision of the Court in the case of Blount v. Webster, (16 Tex. R. 616,) has settled, in reference to grants of the character of the present, that neither settlement, nor the consent of the Federal Executive of Mexico was necessary to their validity. (Smith v. Power, 14 Tex. R. 146.) It is proper to mention that this case was tried before the decision in this Court in Blount v. Webster, which may account for the error of the Court in charging the jury, contrary to the doctrine established in that case, to the effect, that the consent of the Executive of Mexico was essential to the validity of the grant.

The only ground of objection to the plaintiff's title, suggested in the answer, which is not disposed of by the decision in Blount v. Webster, is the alleged abandonment of the country by the grantee. It is insisted that this is a fatal objection to the plaintiff's title. And so it would be, if the

grantee were still the holder of that title, or if he had not parted with it before he abandoned the country. But by the 36th Article of the Law of 1834, under which this grant was issued, it is provided that the grantees who have received their titles to their lands, "may sell them at any time, and the purchaser shall remain with the charge of fulfilling the duty to the State." (Laws of Coa. and Tex., p. 252, Art. 36.) There was no restriction upon the power of alienation by this or any subsequent law. (Emmons v. Oldham, 12 Tex. R. 18, 27.) The grantee was free to sell his land at any time after obtaining the title, and no subsequent act of his could affect the title of his vendee. Having parted with the title, he no longer had any power over it; and it was unaffected by his subsequent abandonment of the country. It had vested in the purchaser, who held it independently of him, and subject only to the charge of fulfilling the duty of the grantee to the State in his own person. If the purchaser did no act to forfeit his title, it could not be forfeited in his hands by any act of his vendor. This case is plainly distinguishable from the cases of Holloman v. Peebles, (1 Tex. R.,) Horton v. Brown, (2 Tex. R.,) and other cases of titles issued under prior laws, which contained the prohibition of alienation for a period of years, and where the original grantee, or his heirs, have sought to recover the land, after an abandonment of the country.

It does not appear when the grantee sold to Brookfield. But if it was after he abandoned the country, and thereby lost his right, it devolved on the party impeaching the title to show it. The plaintiff is admitted to be a *bona fide* purchaser, of a title issued by competent authority, in the forms of law, and valid upon its face; and to have a regular claim of legal transfer from the original grantee to himself; and he must be deemed to have a good title, until the vice or defect, which will have the effect to annul it, appears. This was the elder, and therefore the superior title, and must have prevailed, under the pleadings and evidence, but for the error in the charge of the Court; which effectually precluded a recovery.

It is insisted, however, that the plaintiff's title is to be deemed fraudulent and void, because grantee did not bring with him his family to the country, and left shortly after obtaining the grant. And the Court appears to have assumed, in the charge to the jury, that the title was void upon this ground. It might be a sufficient answer to this objection to the title that it was not pleaded. There was no allegation in the answer of fraud in obtaining the grant ; and, under the pleadings, that issue could not properly be submitted to the jury. But as the case will be remanded, and this defence may be pleaded and relied on upon another trial, it is proper that it should receive some notice at present.

The fraud which will authorize the annulling of a grant in any case, is not a presumption or conclusion of law : in the language of Chief Justice Marshall, it is "not legal and technical, but actual and positive fraud in fact, committed by the person who obtained it." (3 Pet. R. 341.) Fraud is not to be presumed, but must be proved. If it existed in this case, it must have consisted in the practicing of an imposition or deception upon the Commissioner by which he was induced to issue the grant, when otherwise he would not have done so. But there is no evidence of this. In the case of Russell v. Randolph, (11 Tex. R. 460,) it was shown that it was the common practice of the Commissioner, sanctioned by a high law officer of the Government, to issue titles as in this case, and upon similar representations, to applicants whose families had not, and were known by the officers not to have arrived in the country. (11 Tex. R. 467.) The practice was in accordance with the construction placed by the officers upon the law ; and the correctness of that construction is not now open to revision. (15 Tex. R. 590 ; 16 Id. 395 ; 7 Id. 384.) Such being the practice, sanctioned by the officers of the Government, private persons cannot be deemed to have practiced a fraud upon those officers by acting upon their own acknowledged construction of the law. Nor, in view of the practice, can there be any ground to conclude, from the fact that the

applicant in this case had not actually introduced his family, that his representation upon that subject was intended as a fraud upon the Commissioner, or that the latter was deceived and mislead into the action by the representation. There could be no fraud in the case, unless there was actual deception practiced upon the officer in some matter which was material : and the case cited shows that it was not material, or required that the family of the applicant should have been introduced prior to the issuance of the grant. In reference to the practice of issuing the title prior to the introduction of the family, it was said in that case, "Were we to decide that this practice was a fraud and unauthorized by the law, and the titles so issued void, we might disturb hundreds of the grants obtained by the early settlers, and deprive them of their lands, for which they had encountered all the peril, toil, and privation, to which the early settlers were exposed." The decision in that case is an authority for holding that the fact that the family had not been introduced, and that the grantee left the country after obtaining the grant, is not evidence of fraud to authorize the annulling of the grant. Some importance may be supposed to have been attached to the fact that the grantee in that case left with the intention of bringing his family to the country. But it cannot be doubted that if the intention of the party is to have any influence upon the validity of his grant, it must be the intention he conceived at the time he obtained it; and what he did, or intended afterwards could only be material as conducing to show the state of his mind at that time. Such evidence is, in its nature, of too undefined, indeterminate and unsatisfactory a character to warrant a Court in drawing conclusions from it as practical and legal truths, on which to pronounce the nullity of titles. Such a doctrine as that patents and grants may be annulled upon the ground of fraud, deduced from the after conduct of the grantee, will scarcely find countenance in any authority or precedent. We have seen that the grantee was at

liberty to sell his land in this case as soon as he had obtained the title ; and that his right vested instantly in the purchaser. Upon no principle can his subsequent conduct be admitted to affect the title in the hands of the purchaser.  As evidence of fraud in obtaining the grant, it would be too uncertain and unreliable to be admitted.  The grantee may have entertained the *bona fide* intention of bringing his family to the country at the time of obtaining the grant, and, having found a purchaser, may have changed his determination.  What his real intention was at the time, can only be matter of conjecture ; and it would be a dangerous doctrine to admit that titles may be annulled upon conjecture, or the mere suspicion of fraud. The safer and sounder doctrine, on principle and authority, would seem to be that such evidence cannot be received to impeach a grant regularly issued by competent authority. (White *et al.* v. Burnley, lately decided by the Supreme Court U. S.)

The Commissioner who issued the grant was the exclusive judge of the merits and qualifications of the applicant.  It was for him to determine whether he possessed the qualifications requisite to entitle him to the bounty of the Government ; and it is well settled that his decision upon that subject is final, and will not be revised by this Court.  The issue of the grant precludes inquiry upon that subject.  (15 Tex. R. 590 ; 11 Id. 656, 708, 717.)  Thus, in Styles v. Gray, (10 Tex. R. 503,) where it was proposed to impeach the grant by proving that the grantee, who had obtained the grant as the head of a family, "was never a married woman, a widow or the head of a family," this Court held that the evidence was rightly refused.  Upon the same principle it would seem that the title of the grantee in this case cannot be impeached by proving that he had not a family in the country at the time of receiving the grant.  It is to be observed, however, that in that case it was said that if it had been proved that the grantee had fraudulently represented that she was the head of a family, and

by false representations and false witnesses had imposed upon the officers of the Government, and thus obtained the grant, it would have been void. Similar observations have been made in other cases. (1 Tex. R. 730 ; 9 Id. 598 ; 11 Id. 460.) But the cases were not decided upon that ground ; nor has any case in this Court decided whether parol evidence is to be received, at any distance of time, to imperil a grant or patent regularly issued by competent authority, and in the hands of an innocent *bona fide* purchaser, on such grounds. It is not doubted that the Government may take measures to annul a grant which was obtained by fraud. (Sanpoyran v. The United States, 7 Pet. 222 ; White v. Rountz, How. R.)

But if, while the Government is content, a perfect title or patent regularly issued by competent authority, and which has passed into the hands of an innocent purchaser, may be thus impeached by a junior claimant, without any prior equity, a different rule, it would seem, must apply in the case of a grant by the Government from that which obtains in the case of individuals. (Fletcher v. Peck, 6 Cranch. 133, 134, *et seq.* ; Fowler v. Stonum, 11 Tex. R. 478, and cases cited.)

Considerations of public policy and justice may not forbid the admission of parol evidence for such a purpose, while the grant remains in the hands of the original grantee ; if the assault upon the title be not too long delayed, until the holder has lost the original evidence of his right. But there certainly should be some period of time beyond which grants and patents should cease to be open to such attacks in the hands of innocent *bona fide* holders. The door should be closed at some time against the temptation to frauds and perjuries, otherwise there will be no security in paper titles. No one can safely purchase the fairest apparent title without taking the precaution to inquire into the circumstances attending its emanation ; nor can he ever be secure unless prepared at all times with living witnesses to explain away any circumstances of suspicion which may be attempted to be cast upon the origin of his title. If such evidence is to be received at any

distance of time, it will tend greatly to the insecurity of titles, and hold out too powerful inducements to frauds and perjury. As the question of fraud must be referred to the decision of a jury, men's titles may be made to depend on the frail and treacherous memory of witnesses, or even their own personal popularity, or freedom from popular prejudice.

Where fraud is imputed and proved, length of time ought not to shelter the perpetrator of the fraud. But in cases like the present, it is not the guilty perpetrator of the fraud, if there be such, who would be made to suffer its consequences; but the innocent purchaser of what he had every reason to believe an unimpeachable title. And even where fraud is sought to be imputed to the possessor of the title, it is to be observed, in the words of Judge Story, that "length of time necessarily obscures all human evidence; and as it thus removes from the parties all the immediate means to verify the nature of the original transactions, it operates by way of presumption in favor of innocence and against imputation of fraud. (Prevost v. Gratz, 6 Wheat. 497.) "The public," it has been justly said, "have a grave interest in having a limit fixed to litigation for the quiet of the community, and that there may be a period after which the possessor may know that his title and right cannot be called in question." (Humbert v. Trinity Church, 24 Wend. 608 *et seq.*) That there should be some limit assigned to the admission of such evidence, on considerations of public policy, for the security of titles and the repose of society, cannot be doubted. What that limit should be, it is not our purpose at present to endeavor to ascertain. We have referred to the subject for the purpose of eliciting examination and inquiry whenever occasion shall require its further consideration. In the present case there was no allegation of fraud; and had there been, in the view we have taken of the case, it will be seen the Court would not be warranted in deducing it as a legal conclusion from the evidence.

The case was tried upon an agreed statement of facts, made up and admitted, it seems, for the purpose of obtaining a trial at that Term of the Court : it may therefore be different upon another trial. For the error in the charge of the Court, the judgment is reversed and the cause remaded.

Reversed and remanded.