JOHN SUMMERS v. B. H. DAVIS ET AL.

1. A league of land was granted, August 10, 1824, to Bluford Brooks, in Austin's colony. Soon after the grant, Brooks settled on and cultivated the land. September 10, 1825, while in possession, he sold and conveyed it to John Spear, and abandoned the country. Spear, on his purchase, settled upon and cultivated the land for several years, in compliance with the terms of the grant and the requirements of the laws then in force. December 15, 1830, at the instance of Empresario Austin, the ayuntamiento of Austin's colony took action upon the condition of the Brooks league, and finding that "Brooks abandoned the country in 1825," decided that "the land is therefore vacant and the title null and void, and the land can be

granted to other emigrants." In 1863, the land was patented to one Hall, whose assignees brought suit for it : *Held*—

1. That Brooks having occupied and cultivated the land, and not having previously abandoned the country, had an undoubted power of alienation.

2. After the sale to Spear, (who in good faith occupied and cultivated the land,) the subsequent abandonment of the country by Brooks was no sufficient ground for annulling the grant.

3. It is questionable whether the action of the ayuntamiento in such cases was conclusive, unless followed by some action of the commissioner, empresario, or political authority.

4. The proceedings were not conclusive against Spear, whose rights attached prior to the abandonment by Brooks.

2. "TITLED OR SURVEYED" — CONSTRUCTION OF STATUTES. — The act of February 5, 1850, "to prevent locations in the colonies of Austin, De Witt, and De Leon," and prohibiting the issuance of a patent on any locations thereafter made in said colonies, "upon any land heretofore titled or surveyed," (Paschal's Dig., 809,) and the act of August 27, 1856, "to quiet land titles," and ratifying and confirming "the headrights, augmentations, and special titles to the colonists in the colonies of Austin and De Witt," (Acts of 1856, p. 59, Gen. Laws, adjourned session,) in their terms covered the defects, if any, in the title of Spear to the Brooks league; there being no evidence of any intent other than the plain and ordinary sense of the terms of said acts.

3. ACTUAL SETTLERS FAVORED.—Actual settlers and occupants have always been favored by our laws ; and the act of August 27, 1856, ratifying certain classes of grants, including headrights, and releasing all conditions attached thereto, shows that it was not the policy of our laws to enforce forfeitures in such cases.

APPEAL from Burleson. Tried below before the Hon. Spencer Ford, appointed special judge to try the case.

John Summers, as plaintiff below, claiming one undivided half of a league and labor of land in Burleson county, patented to T. J. Hall on the 21st of September, 1863, brought this suit, on the 4th of February, 1874, against the defendant Magoffin, who owned the other undivided half of the land, and against B. H. Davis and the other named defendants, who occupied the premises and claimed the same adversely to plaintiff and to the defendant Magoffin. The metes and bounds of the land were given in the petition, and plaintiff

prayed for partition of the same, and for restitution of the part allotted to him, and for damages, costs, &c. The petition was indorsed that the suit was brought as well to try title as for partition and damages.

The defendant Magoffin, by his answer, filed February 20, 1874, claimed an undivided half of the land described in plaintiff's petition, and prayed for partition.

The other defendants, who are the appellees in this court, by their answer, filed August 24, 1875, presented—

1. A general demurrer.

2. A general denial and plea of not guilty.

3. The statute of limitations of three, five, and ten years.

4. Possession under title and color of title, with payment of taxes, since September, 1825.

5. That the patent issued to T. J. Hall on the 21st of September, 1863, under which plaintiff claims, was issued in fraud of the law, at a time when the issuance of any patent was prohibited by law, and conveyed no title; and defendants prayed for a decree cancelling the same.

On the 26th of August, 1875, there was a verdict for the defendants, other than Magoffin, and judgment that plaintiff take nothing by his suit, and cancelling the patent to T. J. Hall.

Motion for new trial was filed by Summers August 26, 1875, which was overruled, and he appealed.

*Sayles & Bassett,* for appellant.

I. The court erred in refusing to exclude from the jury the testimony tending to show the settlement and cultivation of the Bluford Brooks league, and the sale of the same shortly after the grant.

The evidence showed that plaintiff Summers and defendant Magoffin each held a valid deed of conveyance to one undivided half of the land described in the plaintiff's petition, from the heirs of Thomas J. Hall, deceased, to whom a patent was issued on the 21st of September, 1863. The defend-

ants (except Magoffin) were in possession of the land at the institution of the suit. The same league of land had been previously granted to Bluford Brooks, as a colonist ot Austin's colony, on the 10th of August, 1824.

By the proceedings of the ayuntamiento of Austin's colony, within the limits of which the land was situated, the title of Bluford Brooks was, on the 15th day of December, 1830, declared vacant, in consequence of his abandonment of the country. Bluford Brooks had abandoned the country, as stated in said proceedings, before the 15th day of December, 1830.

The decree of the ayuntamiento recites that the ayuntamiento have declared unanimously that the following persons never cultivated their land as granted to them, and, having abandoned the country, have by this fact unqualifiedly declared that they abandoned the country, and that their lands had reverted to the mass of the lands belonging to the State, and were consequently vacant. Then follows, among others, the name of Bluford Brooks, who it is declared abandoned the country in 1825, and " his land is therefore vacant, and the title null and void."

The evidence referred to in this assignment of errors is as follows: " Bluford Brooks settled upon and cultivated said land shortly after his said grant, and within two years from the date thereof. While so in possession, and while still a citizen of the State of Coahuila and Texas, Bluford Brooks sold, and conveyed by valid deed of conveyance, said league of land to John Spear on the 10th day of September, 1825, and said John Spear, on the said 10th day of September, 1825, settled upon and cultivated said land for several years, in compliance with the laws then in force and the terms of grants of lands to colonists. In connection with the above testimony, is a deed from John Spear to John R. Foster for one-quarter of the Brooks league, dated May 10, 1826."

The plaintiff asked the court to exclude the above testimony from the jury, on the ground that the defendants sought

by the said testimony to impeach the decree of the ayunta-
miento, a tribunal having competent jurisdiction; that said
decree was conclusive of the facts therein stated, and of the
nullity of the Brooks title; was a proceeding *in rem,* and
binding on all the world; and that the facts so stated and the
decree so made could not be inquired into or attacked in this
collateral proceeding, and that said evidence was irrelevant
and incomplete. But the court refused to sustain the excep-
tions and to exclude the testimony, and, by its charges, per-
mitted the jury to consider the same.

Plaintiff also asked the court to instruct the jury, that by
virtue of the action of the ayuntamiento aforesaid, which had
competent authority for that purpose, the title to Bluford
Brooks was cancelled and annulled, and the land restored to
the mass of the public domain, and such previous survey still
constituted no bar to the location and patent of the same
land to Hall in 1863, which was refused.

The court, in substance, charged the jury, that while the
finding of the ayuntamiento that Brooks had abandoned the
country in 1825 is conclusive of that fact, yet the declaration
of the forfeiture of title on that ground alone was without
authority of law; and if Brooks had sold the land before his
abandonment of the country, and his vendee had entered upon
and cultivated the land ever since such sale, the jury should
find for the defendants.

II. A title to land issued prior to the 5th day of February,
1850, and which had been declared null and void by compe-
tent authority, did not prevent the grant by the State of land
in Austin's colony on the 21st day of September, 1863.
(Paschal's Dig., 809; Marsh *v.* Weir, 21 Tex., 97; Taylor's
Lessee *v.* Myers, 7 Wheat., 23; Lindsey *v.* Lessee of Miller,
6 Pet., 666; Galloway *v.* Finley, 12 Pet., 264.)

III. The ayuntamiento of Austin's colony had authority, on
the 15th of December, 1830, to revoke and declare null and
void titles to land issued under the colonization laws then
in force. (Holliman. *v.* Peebles, 1 Tex., 699; Hancock *v.*

35

McKinney, 7 Tex., 384; Jenkins v. Chambers, 9 Tex., 167; Jones v. Garza, 11 Tex., 207; Marsh v. Weir, 21 Tex., 97; State v. Sais, 47 Tex., 307.)

IV. The decree of the ayuntamiento, declaring the land granted to Bluford Brooks "vacant and the title null and void," was conclusive, and not subject to revision in any subsequent collateral proceeding. (Jenkins v. Chambers, 9 Tex., 228; Styles v. Gray, 10 Tex., 503; Hatch v. Dunn, 11 Tex., 708; Marsh v. Weir, 21 Tex., 97; Johnston v. Smith, 21 Tex., 722; Bowmer v. Hicks, 22 Tex., 155; Howard v. Colquhoun, 28 Tex., 134; Mills v. Alexander, 21 Tex., 154; Thouvenin v. Rodrigues, 24 Tex., 468; Bohanan v. Hans, 26 Tex., 445; Webb v. Mallard, 27 Tex., 80; Story's Confl. of Laws, 591; Freeman on Judg., sec. 606; The Globe, 2 Blatchf., 427; Thoms v. Southard, 2 Dana, 475; United States v. Arredondo, 6 Pet., 729; Lownsburg v. Rakestrau, 2 Cent. Law Jour., 168.)

V. A decree of a court of competent jurisdiction is not void by reason of any irregularity in its proceedings, or be not brought in question by a direct proceeding. (Owen v. Shaw, 20 Tex., 82; Cook v. Hancock, 20 Tex., 3; Chapman v. 20 Tex., 82; Cook v. Hancock, 20 Tex., 3; Chapman v. Sneed, 17 Tex., 430; Hamilton v. Ward, 4 Tex., 356; Randon v. Cartwright, 3 Tex., 268; Lewis v. San Antonio, 26 Tex., 318; Monroe v. Douglas, 4 Sandf. Ch., 184.)

We therefore insist that the charge of the court, in effect disregarding the condemnation of this land, was erroneous.

*Davis & Beall* and *J. D. Thomas*, for appellees.

I. By the colonization law of the fourth of January, 1823, a colonist in Austin's colony was authorized to sell his land acquired as such colonist at any time after obtaining his grant and before abandoning the country; and as Bluford Brooks, while still a citizen and colonist of Austin's colony, and in possession of the land granted to him as such colonist, conveyed it to John Spear, who in due time complied with all the

conditions of the grant, the abandonment of the country by Brooks subsequent to his alienation of the land, did not affect, and could not defeat, the title of Spear. (Paschal's Dig., arts. 532, 539; Portis *v.* Hill, 14 Tex., 70, 71; Johnston *v.* Smith, 21 Tex., 724, 725; Holliman *v.* Peebles, 1 Tex., 692, 693; Yates *v.* Iams, 10 Tex., 175, 176; Bowmer *v.* Hicks, 22 Tex., 161; Horton *v.* Brown, 2 Tex., 96, 97.)

II. The report of the ayuntamiento of December 15, 1830, was not *per se* an adjudication of the title of John Spear; and standing alone, without any recognition or confirmation by the empresario, or other authority, denouncing the land as vacant, or regranting it to another, it had not the effect to cancel and annul the grant of Bluford Brooks or divest the title of Spear.

The report of the ayuntamiento is substantially as follows:

"In the town of San Felipe de Austin, on the fifteenth day of December, 1830, pursuant to adjournment made on the seventh day of this month, the ayuntamiento met. The following members were present, to whom had been referred the subject of the official letter of the empresario, Austin, under date of the seventh instant, as a committee to examine into and report on the list of the titles made to settlers in the first colony of the said empresario: The President, Thomas Barrett, Jesse H. Cartwright, Churchill Fulchear, Walter C. White, and William Pettus. The said list was then read, and the merits of each particular settler contained in the list [examined, to] determine which colonists have complied with the letter of the colonization law in the settlement and cultivation of the land granted to them under said law, and whose titles ought to be, and are, confirmed; and also those who have not complied, either by having abandoned the country or failed to cultivate and settle the lands in conformity with said law.

"The ayuntamiento, therefore, forming a committee of the following and before-mentioned members, with the exception of the president, who presided, and could not be of the

committee: Jesse H. Cartwright, second regidor; Walter C., White, third regidor; Churchill Fulchear, fourth regidor, and William Pettus, sin pro., declared unanimously that the following persons never cultivated their land as granted to them, and having abandoned the country, have by this fact unqualifiedly declared that they abandoned the country, and the land they received by concession from the government do be considered and esteemed as forfeited; and that the said land did legally revert to the mass of lands belonging to the State at the expiration of the two years from the date of their title, in conformity with the twenty-third article of the colonization law of the fourth of January, 1823, and consequently are vacant, and can be occupied and granted to other emigrants comprehended in the new contracts on colonization of the said empresario, Stephen F. Austin, and are as follows:   *   *   *

"John R. Williams, one league and labor of land lying on Cedar creek; title dated twenty-ninth July, 1824. The said Williams abandoned the country in the spring of 1825, and as he never complied with the requisites of the colonization law, by not cultivating the league of land which was granted to him, in conjunction with the fact of abandoning the country, all title and claim in the said league of land, which by said concession was vested in said Williams, expired when he abandoned the country; for which reason it is declared vacant, and the title for it null and of no effect. The labor of land granted to said Williams he improved, and lived on, and disposed of it, and made a legal transfer, which he had a right to do. The title of the labor is confirmed.   *   *   *

"Bluford Brooks, one league of land lying west of the Brazos river, near the San Antonio road; title dated tenth of August, 1824. The said Brooks abandoned the country in 1825. The land is therefore vacant, and the title null and void; and the land can be granted to other emigrants.   *   *   *

"The balance of the concessions made by the commissioner and empresario to the other families in the first colony, amounting in all to 290, is contained in the list fur-

nished by the empresario, Austin, drawn from the register of the colony, in which is contained all the titles in the said first colony, are perfect and valid; for each of the said grantees has fully complied with the conditions of the law, and of his concession, and they have each of them completed their titles, and therefore confirmed to them and their legal representatives.

"All of which received the undivided and unanimous approbation of the body; and that it may, at all times, appear for the satisfaction of the interested persons, the ayuntamiento ordered that the official letter of said empresario, and the said list, be filed in archives of the ayuntamiento, and that this act be signed by every one of the members present; and, further, that a certified copy of it be passed to the empresario, Stephen F. Austin, for his information and the purposes for which he may conceive it necessary."

It appears from the records of the General Land Office that the land was never granted or patented to any one, except to Bluford Brooks in 1824, and to Thomes J. Hall in 1863. Neither Spear nor any subsequent vendor was ever disturbed in his possession of the land. (Jones v. Garza, 11 Tex., 206; Holliman v. Peebles, 1 Tex., 696, 701; Johnston v. Smith, 21 Tex., 724, 725; Yates v. Iams, 10 Tex., 175, 176; Bowmer v. Hicks, 22 Tex., 161; Jenkins v. Chambers, 9 Tex., 228, 229; Hancock v. McKinney, 7 Tex., 455, 456.)

III. In order that the report of the ayuntamiento upon the Brooks title should have the effect of an adjudication, it should have been acted upon and confirmed by the empresario, commissioner, or some other authority, either by a denunciation of the land as vacant and a regrant of it, or by some other action; and as that report never was confirmed in any manner, but, on the contrary, the empresario and other colonial authorities recognized the right of Spear and his vendees to the land, and never disturbed them in their use and enjoyment of the same from the time Spear first

took possession, on the 10th of September, 1825, to the date of the institution of this suit, said report is of no force or validity as against the title of Spear and his vendees. (Holliman *v.* Peebles, 1 Tex., 696, 701; Johnston *v.* Smith, 21 Tex., 724, 725; Portis *v.* Hill, 14 Tex., 70, 71; Yates *v.* James, 10 Tex., 175, 176; Bowmer *v.* Hicks, 22 Tex., 161; Jenkins *v.* Chambers, 9 Tex., 228, 229; Hancock *v.* McKinney, 7 Tex., 455, 456; Hamilton *v.* Menifee, 11 Tex., 746.)

IV. The report of the ayuntamiento is, at most, only an inquest of office, and although in that character a proceeding *in rem,* because made in behalf of the public, still it is not conclusive, except as against the parties immediately concerned and their privies; and then only as to the fact of abandonment found by the inquisition. (Jones *v.* Garza, 11 Tex., 206; Holliman *v.* Peebles, 1 Tex., 696, 701, 709; Stokes *v.* Dawes, 4 Mason, 268; 1 Greenl. Ev., sec. 565; Commonwealth *v.* Selden, 5 Mumf., 160.)

V. If the proceedings of the ayuntamiento did have the effect to annul the grant to Bluford Brooks, it then became the duty of the empresario and commissioner to have remitted the forfeiture of the land, or regranted it to Spear and Foster, as colonists of Austin's colony; and as the claim of Spear and Foster to the land could not have been disregarded by the colonial authorities, so neither can it be impugned by any one on the ground of the supposed nullity of the original title. (Hamilton *v.* Menifee, 11 Tex., 746.)

VI. If the report of the ayuntamiento was effectual to annul the title issued to Bluford Brooks, from and after December 15, 1830, or from and after the expiration of two years from the date of the issuance of said title, still, that title having once been perfect, the statutes of February 5, 1850, and August 27, 1856, absolutely prohibited the issuance of the patent to Thomas J. Hall on September 21, 1863, under which appellant claims, and rendered said patent void when issued. (Paschal's Dig., art. 809; Gen. Laws 1856, 59; Hancock *v.* McKinney, 7 Tex., 451, 452, 454; Holliman

*v.* Peebles, 1 Tex., 693; Portis *v.* Hill, 14 Tex., 70, 71; Galloway *v.* Finley, 12 Pet., 298, 29 (12 Cur., 728); McArthur *v.* Dun, 7 How., 266 (17 Cur., 111); Jackson *v.* Clark, 1 Pet., 632 (7 Cur., 736).

*Shepard & Garrett,* also for appellees.

GOULD, ASSOCIATE JUSTICE.—The plaintiff, John Summers, brought his action of trespass to try title for a league of land, claiming under a patent to Thomas J. Hall, issued in 1863. The defendants claim under a grant of the same league of land to Bluford Brooks, as a colonist of Austin's colony, of date August 10, 1824. Shortly after receiving the grant, Brooks settled upon and cultivated said league; and on September 10, 1825, whilst so in possession, and still a citizen of Coahuila and Texas, sold and conveyed it by valid deed of conveyance to John Spear; and said John Spear, on the said 10th day of September, 1825, settled upon and cultivated said land for several years, in compliance with the laws then in force and the terms of grants of land to claimants. The defendants claim under a regular chain of title from John Spear, and possession was continuous in the defendants, and those under whom they claim, down to the institution of this suit.

Brooks abandoned the country in 1825. On the 15th of December, 1830, the ayuntamiento of Austin's colony "took into consideration the subject of an official letter of the empresario, Austin, and examined the list of titles made by the said empresario in his first colony, for the purpose of determining who had complied with the conditions of their grants, and whose titles ought to be, and are, confirmed; and also who had not complied, either by abandoning the country or failing to cultivate and settle the lands in conformity with the laws." (See statement of case in Holliman *v.* Peebles, 1 Tex., 675, where the identical proceedings of the ayuntamiento which are relied on in this case were considered as to a different grant.)

That part of the proceeding having reference to the Brooks league is as follows: "Bluford Brooks, one league of land lying west of the Brazos river, near the San Antonio road; title dated 10th of August, 1824. The said Brooks abandoned the country in, 1825. The land is therefore vacant, and the title null and void; and the land can be granted to other emigrants." We copy one other extract from those proceedings: "John R. Williams, one league and labor of land lying on Cedar creek; title dated 29th July, 1824. The said Williams abandoned the country in the spring of 1825, and as he never complied with the requisites of the colonization law, by not cultivating the league of land which was granted to him, in conjunction with the fact of abandoning the country, all title and claim in the said league of land, which by said concession was vested in said Williams, expired when he abandoned the country; for which reason it is declared vacant, and the title for it null and of no effect. The labor of land granted to said Williams he improved, and lived on, and disposed of it, and made a legal transfer, which he had a right to do. The title of the labor is confirmed." The instrument ends by directing that "a certified copy be passed to the empresario, Stephen F. Austin, for his information and the purposes for which he may conceive it necessary." The Bluford Brooks league does not appear to have been granted to any one else until the patent to Hall, in 1863; and down to that time John Spear and his vendees remained in possession, undisturbed, no further action of the authorities appearing.

On February 5, 1850, the Legislature passed an act entitled "An act to prevent locations in the colonies of Austin, De Witt, and De Leon," as follows: "That no certificate of land, land warrant, or evidence of land claim, of any kind whatever, shall hereafter be located upon any land heretofore titled or surveyed within the limits of the colonies of Austin, De Witt, and De Leon; and the Commissioner of the General Land Office is hereby prohibited from hereafter issuing a pat-

ent on any location hereafter made for any of the lands described in this act; and should any patent be hereafter issued for the same, or a part thereof, contrary to the provisions of this act, the same shall be null and void." (Paschal's Dig., art. 809.) On August 27, 1856, was also passed an act entitled "An act to quiet land titles," as follows: "That the head-rights, augmentations, and special grants made to the colonists in the colonies of Austin and De Witt, are hereby ratified and confirmed, and all conditions attached to the same are hereby released; provided that this section shall extend only to titles issued previous to the 13th day of November, A. D. 1835." (Acts of 1856, p. 59, Gen. Laws, 4th Leg., adjourned session.)

The charge instructed the jury, in substance, that if Brooks sold the land before abandonment of the country, and his vendees entered into possession immediately, and have held and cultivated the land ever since, to find for defendants. Accordingly, there were a verdict and judgment for defendants, from which Summers has appealed.

On the part of appellant, it is claimed that the legal effect of the proceedings of the ayuntamiento was to annul the Bluford Brooks grant as completely as though it had never had an existence, and that therefore it was thereafter vacant land, and not "titled" or "surveyed" land, within the meaning of the act of 1850.

The grant to Brooks was under the colonization law of 1823, under which—having received the grant, and having occupied and cultivated the land, and not having previously abandoned the country—he had an undoubted power of alienation. (Portis *v.* Hill, 14 Tex., 71; Emmons *v.* Oldham, 12 Tex., 27; Thomas *v.* Moore, 46 Tex., 433.)

After this sale to Spear, who in good faith at once occupied and cultivated the land, the subsequent abandonment of the country by Brooks was no sufficient ground for annulling the grant. (Johnson *v.* Smith, 21 Tex., 722.)

If Brooks had abandoned the country without selling, there

is authority for the position that the decree of the ayunta-
miento declaring the land vacant, if followed up by a regrant
by the proper authority, conclusively establishes the fact of
abandonment, and consequent forfeiture, as against Brooks or
his heirs. (Marsh *v.* Weir, 21 Tex., 97; Holliman *v.* Peebles,
1 Tex., 699.)

It seems questionable, however, whether the proceedings
of the ayuntamiento in such cases were designed to have the
conclusive effect of a judgment, unless followed by some ac-
tion of the commissioner, empresario, or political authority;
and certainly, with the lights before us, we are not prepared
to hold that the proceedings which we have recited are con-
clusive as against Spear, whose rights attached prior to the
abandonment. (Jenkins *v.* Chambers, 9 Tex., 167; Johnston
*v.* Smith, 21 Tex., 722; Jones *v.* Garza, 11 Tex., 206.)

We have not, however, found it necessary to pass definitely
on this question. The condition of the business of this court
forbids all unnecessary delay in the examination of questions
not essential to the disposition of a case. In our opinion,
whatever may have been the effect of the proceedings of the
ayuntamiento, it did not obliterate the fact that the Bluford
Brooks league was, at the time of the passage of the act of
1830, land "heretofore titled or surveyed," within the mean-
ing of that act. Literally, it was land "heretofore titled"
and "surveyed"; and unless it be made to appear that it was
not the intention of the law to embrace such cases, the plain
and ordinary meaning of the words used will control. The
object of this statute, as well as that of 1856, was undoubtedly
to quiet land titles in the colonies named; and it is reason-
able to assume that it embraced those who, at the time these
statutes were enacted, had for many years continued undis-
turbed to cultivate, occupy, and claim land under a title at
one time unquestionably valid, and who, if that title was in
truth annulled, had themselves been guilty of no fault, but
suffered because of the dereliction of another. As actual set-
tlers and occupants, the defendants belonged to a class always

favored by our laws; and as their title, if invalid, was so rather on technical grounds, than on grounds which affect the equity of their claim, it is difficult to believe that they were not within the object and spirit of the law.   Even if, for the purposes of limitation, the effect of the decree was that the Bluford Brooks title was henceforth " to be regarded as though it never had an existence," we do not think that the Legislature had it in view that such was the legal status of such titles, or that the holders thereof were intended to be excluded from the protection extended to others.   If such cases, however, had been contemplated, we see no reason to believe that the language of the act would have been changed.   The act of 1856, ratifying certain classes of grants, including headrights, and releasing all conditions attached thereto, shows that it was not the policy of our laws to enforce forfeitures in such cases.

The act of 1850 is nearly identical with a statute enacted by Congress, and construed by the courts of the United States in several cases.   The Supreme Court, in construing that statute, say: " The statute is general, including by name all grants, not distinguishing between void and valid; and the plainest rules of propriety and justice require that the courts should not introduce an exception, the Legislature having made none." (McArthur's Heirs *v.* Dun's Heirs, 7 How., 271.)   The court applied the statute to a void grant, which, however, still constituted an equitable claim against the government.   Applying a similar rule, we are of opinion that the effect of the acts of 1850 and 1856 was to prohibit interference by location with those claiming the Bluford Brooks league under Spear, and to render void the patent issued thereon.

The judgment is affirmed.

AFFIRMED.