Wheeler, J.
It does not appear that Haggard received any concession- or other evidence of right to (lie land lie claimed previous to the date of the title issued to him by Talbot Chambers in 1835. Ilis having settled upon and cultivated the land, without having be,on placed in possession by the proper authority, or having received any evidence of right to it, gave him no title, legal or equitable, wliieh can be recognized in a court of justice. Even a survey without a concession or order of survey would not be a legal appropriation of the laud. (Howard and Wife v. Perry, 7 Tex. R.; Smith v. The United States, 10 Pet. R., 326.)
The title issued to Haggard in 1835 bears the same date as his order of survey ; and this was the. first act of the government setting apart to him the, land. It was preceded by no inchoate, or equitable title on which it could relate back to any antecedent period. It was a, title to the land embraced wit.hiu it only from its date. The defendant’s is the older title, and, if valid, must prevail. The question of its validity, therefore, is the. material subject of inquiry.
The objections to the defendant’s title, taken at the trial and now'insisted on, are in effect,
1st. That the Governor had no authority to make the concession for the quantity of land and on the evidence on which it was made.
2d. That the grantee had no right to select the laud granted in two places, or to obtain titles on two distinct surveys.
3d. That the land does iiot appear to have been surveyed by a legally authorized surveyor.
4th. That the law under which the concession was made was repealed previous to the completion of the title, and that for these several reasons it is void.
The 17th article of the colonization law of 1825, under which the grant was, made, is as follows: “ It shall belong to the executive to increase the portions specified in articles 14,10, and 16 in proportion to the family, industry, “and activity of the colonists according to the separate reports upon the subject that shall be rendered by the ayuntamientos and commissioners, al“ways bearing in mind the provision of article 12 of the decree of the general “ Congress on the subject.” (Laws and Decrees of C. & T., p. 18.)
The articles 14, 15, and 10 here referred to are those which provided the quantity of land which should lie granted to colonists and to families ami single men, “who, having (‘.migrated separately and at their own expense,’* might wish to annex themselves to any of the new settlements. The lOth article provides especially for this latter class, to which the grantee in this case belonged.
An authority is thus conferred upon the executive by the 17th article to increase the quantity of land provided for the beneficiary of the 16th article to any amount to which, in his judgment, lie may be entitled, subject only to the limitation contained in article 12 of the national colonization law, which restricts the quantity to eleven leagues. (1 White, G01.)
Of the authority of the executive under the 17th article to make the grant there call be no question. The authority to inórense the quantity, that is, to grant a quantity “in proportion to the family, industry, and activity” of the applicant., presupposed the authority to judge of the qualifications of the applicant. On this subject lie, ivas to receive the reports of the ayuntamientos and commissioners. These were, designed to afford him the requisite information on which to exercise his judgment. But they were not binding upon him to control it. Their object was not to determine for him the quantity of land to which the applicant was entitled, hut simply to enlighten his judgment. It belonged to the executive, in the language of the law, to increase the portions of land in proportion to the. family, industry, and activity of the applicant. Of these the executive was to judge. And although the law afforded him cer *115 tain moans of information, it dirt not prohibit him from obtaining information from other sources, or from acting- upon his own personal knowledge of the facts, should ho be in possession of the requisite information. Such, in some mea-ure, appears to have been the action of the executive in this instance. The applicant resided in Leona Vicario. The Governor therefore referred his ilion It' the ayuntamiento of tiiat place, on whoso report, together with liis personal knowledge and certain documentary evidence furnished by the petitioner, lie appears" to have acted. This certainly was more in accordance with the spirit and intention of the law than to have referred the petition to the local authorities of the department in which the land was situated, who probably possessed no knowledge of the petitioner or of his merits and qualifications. Where the object contemplated by the law was information, it is rational to suppose that the intention was tiiat it should be applied for where it could be obtained rather than where it did.not exist,. There is therefore, we think, nothing in the objection that the Governor acted upon the report of the local authority where the applicant resided rather than upon that of the department in which tlie laud was situated.
The objection that the evidence upon which the Governor acted was not sufficient to entitle the applicant to the grant is not entitled to more weight. That was a question, confided by' the law to the judgment of the executive, and it is unquestionable that liis decision upon it is not now subject to revision by this court. Willi as much propriety might we sit here to revise the action of the authorities iu granting- a league rather than a labor under the 14th article of tlie law. or to inquire into the sufficiency of the evidence upon which the empresarios and commissioners acted in making- a grant in any case. It is scarcely' necessary to say that such inquiries would be as unprecedented as they would be nil warrantable. The fact that the applicant possessed the requisite qualification,- ivas determined by the Governor in passing upon the application, and he was not bound to preserve the proofs upon which that decision ivas founded, nor could he be compelled to reproduce them upon the trial of this case.' The Supreme Court of the United States applied this principle to cases iu which tiiat tribunal was required to pass directly upon tlie validity of the concession, upon the application of the grantee for its confirmation under the act of Congress. In Ohoteau’s Heirs v. The United States, Chief Justice Marshall said: “We think that in the spirit of the decisions which have beeii “ heretofore made by this court and of the acts of confirmation by Congress “ the fact tiiat, tlie applicant possessed the requisite amount of property to en- “ title him to the land-he solicited was submitted to tlie officer who decided “oil tlie application, and that he is not bound to prove it to the court which “passes ou Hie validity of the grant.” (9 Pet. R., 1Ü3-4.)
What evidence, besides tlie report of tlie ayuntamiento was before the Governor when he made tlie concession does not appear. In the evidence embodied in the record there is nothing to induce the belief that, tlie grantee did not present a meritorious claim or tiiat he was not justly' entitled to the grant he obtained. But if upon the evidence the merits of tlie applicant were doubtful, that question is not now open to discussion. The Governor was constituted by tlie law the judge of the qualifications of tlie applicant. Having- exercised liis judgment and decided upon the question legally submitted to liis cognizance, liis decision is final. “The only questions” (said the Supreme Court of the United States in tlie ease of the United States v. Arredondo) “which can “arise bet ween an individual claiming a right under the act done and tlie “ public, or any person denying its validity, are power in tlie officer and fraud “ in the party. All other questions are settled by the decision made or tlie “act- done by the tribunal or officer, whether executive, legislative, judicialj “special, unless an appeal is provided for or other revision by some appellate “ or supervisory tribunal, is prescribed by law.” (G Pet. R., 729, and authorities cited.)
It remains to consider the objections taken to the title issued to the grantee by' tlie special commissioner in 1834. And it is objected that tlie con *116 cession did not give the authority to obtain titles to the lands granted in two distinct localities.
, This question was before the Supreme Court of the United States in the case of the United States v. The Heirs of Clarke et al. upon a Spanish concession to land in Florida similar in its terms to the present, and the court in that case confirmed t-lic grant to the several surveys. (16 Pet., R, 228; 10 Id., 313.)
But it is not deemed necessaiy to determine in this case whether the concession gave the right to the gran tee to select the land in two places or not. For however that may be, it certainly gave him the right to select six leagues at the place where that now in question ivas selected. It will scarcely be denied that the right to select six leagues in a giveu place included the right to a less quantity oí- that the grant of six leagues conferred the right to obtain a title to a less quantity of the land particularly designated in the concession. And it is not perceived that the having obtained a title to a part elsewhere, even if that were unauthorized and void,' would affect the title of the grantee to the residue of the land actually embraced in the grant in the ifface designated by it. With, whatever effect this objection might tie urged against the validity of the title to the selection made upon the Brazos, it cannot affect the validity of the title to the laud here in question, which was selected in the place where granted.
It is further objected to the title that it does not appear that the survey was made by a legally authorized surveyor.
The title states that the land was surveyed for the grantee on the 3d day of March, 1S32, by the scientific and approved surveyor, Thomas H. Bordeu. The presumption is that it was surveyed by order of the alcalde, who was authorized by the concession to put the grantee in possession and issue to him the title, and in consequence of whose failure to complete the title a special commissioner was appointed for that purpose. It was in proof that the land had been surveyed, and there is no question that the survey was accurate and in entire conformity to law. And in the case of Jones v. Menard this court hold the following language': “We are not prepared to say nor is it ne- “ cessary to decide but that, if the land had been surveyed by a legally authorized surveyor, (hat is, if the work had been done ready to the hand of those “ who as colonists might wish to locate it, such survey would be sufficient, the “ return being made after the issue of the order. This is believed to have been “ in very general practice by the surveyors under the empresarios. If it had “ been surveyed before the order of survey the same surveyor could certainly with “ propriety swear to the correctness of his field notes as well and with as much “ truth as if lie had waited to receive the order before he made the survey.” (I Tex. B., 789.) Here the survey was made long after the date of the concession which conferred the authority" on the alcalde to put .the grantee in possession. The presumption is that there was evidence before the commissioner that the surveyor had been duly authorized to make the survey, either by the alcalde authorized by the concession, or by another commissioner for that purpose. With the evidence before him that there had been a legal survey by competent authority it was not necessary that the commissioner should have caused a resurvey, iior was it necessary that lie should embody in the title the authority under which the survey had been made.
This, like other objections to the. title, is founded on the assumption that it-devolved on the grantee to prove that all the prerequisites to the making of the grant and the issuing of the title had been complied with. Whereas the reverse of this is true. It devolved on the party impeaching the title to show their non-performance. “That every prerequisite lias been performed is an infer- “ ence properly Reducible and which every man has a right to draw from the “existence of the grant itself.” (Per Ch. Jus. Marshall, in Polk’s Lessee v. Wendal, 3 Cond. R. S. C. U. S., 291.)
The presumption is that the officer authorized by law to issue the title has done his duty, and lias acted in all respects in conformity to law until the contrary appears. And it is incumbent on the party who would controvert a grant, executed by competent authority, 'with the forms and solemnities re *117 quired by law, to repel this presumption by proof. “A grant or concession,” (said Chief Justice Marshall, in Dolassus t>. The United States,) “made by that “officer, who is by law authorized to make it, carries with it prima facie evidence'that it is within liis powers. No excess of them or departure from “ them is (o be presumed. He violates bis duty by such excess, and is responsible for it. He who alleges that an officer, intrusted with an important du“ty, has violated his instructions, must show it.” (9 Pet. R., 134; Strother v. Lucas, 13 Pet. R., 410.)
The title in this ease, having been issued by competent authority, afforded prima ft'air evidence that all the prerequisites of the law had been 'complied with. And if there was any omission or illegality committed on the part of the officer of a character to invalidate the title, it devolved on the plaintiff in tills case to show it
Finally, it is objected tiiat the law under which tlie concession was made was repealed by the law of the 28th of April, 1832. (Decree 190, Laws & Dee., art. 38.) But the 10th article of the repealing law contains an express reservation of the rights of those who had received concessions as purchaser or ¡seniors under the law of 1825. This reservation embraced the concession (o Bangs. The 29th article of tlie law of the 20th March, 1834-, (Id., Dec., 272,) repealed the law of 1832. There is, however, nothing in the pror visions of this law which .evidences any intention on the part of the Legislature to annul rights acquired under the former laws. On tlie contrary, tlie provisions of articles 30, 33, and 34 manifest a different intention. And to give to the. law a retrospective effect to annul rights previously vested, as were those of Bangs to the laud designated in liis grant, unless that had been the clearly expressed intention of the Legislature, would be opposed to the received rule of const ruction of both the common and the civil law'.
But it is insisted that there was remaining no provision for completing tlie l.if les under concessions to settlers. The granting power, however, remained in tlie Governor of tlie State. The law, it is true, had made an entire change in respect to its exercise as to the future. But as to past contracts', there is no evidence in the law of an intention to charge it; and there is nothing repugnant to the conclusion that it remained unimpaired. As to colonization contracts, article 30, while it declares tiiat thereafter “no colonization “contracts shall be made,” expressly provides tiiat those theretofore made “shall he strictly fulfilled, and in entire accordance with the law of tlie 24th “of March, 1825.” And it is apparent from articles 32, 33, and 34 that it was the intention that tlie equitable claims upon the government of others than those whose rights were included in the reservation in favor of colonization contracts should be respected, and especially that those persons who had “emigrated separately and at their own expense,” and who, as a class, had been provided for by the 16th, 17th, and ISth articles of the law of 1825, of which class was the grantee in this ease, should be secured in their rights, as fully and to tlie same extent as if tiiat law had remained in force.
The instructions to commissioners were repealed only in so far as they were opposed to the provisions of the law of 1834, (Deo., 272, art. 29.) Those* of tlie 4th of September, 1827, (Laws & Deo., p. 70,) were doubtless mainly intended for tlie government of commissioners for the distribution of lands to colonists proper. But their terms are sufficiently comprehensive to embrace and they were made to embrace other cases of concessions made under tlie law of 1825.
The reason of the law which required that colonization contracts should be carried out in accordance with the law of 1825 undoubtedly applied with equal force to the concession in this case. Tiiat law did not in terms provide for extending titles to colonists introduced under those contracts. But it could never have been doubted tiiat it was intended to include them. And there can be as little doubt that it was tlie then received construction of the law that the repeal did not divest the Governor of the authority to complete the title's where there, had been concessions made to purchasers and settlers under the law of [825. That construction seems more natural and rational than the *118 opposite one, which would require us to suppose, that the legislature intended, indirectly and by implication, to annul pre-existing- rights and contracts guarantied and confirmed by previous laws. We cannot suppose that such a consequence- was intended. And the history of the times, it is believed, as connected with this subject will adbrd abundant evidence that such was not understood to be the effect of the repealing- law.
Note 37. — Styles v. Gray, 10 T., 503; Hardiman v. Herbert, 11 T., 056; Hatch v. Dunn, 11 T* 708; Ruis v. Chambers, 15 T., 690.
Note 3S. — MeGehee v. Dwyer, 22 T., 435.
But whatever might have been our opinion of the correctness of the construction of the law adopted and acled upon by the Governor in appointing a commissioner to issue the tille to the grantee in this case, we have heretofore decided that (he construction of their powers and of the laws which conferred them, adopted and acted upon by the former authorities of the country, must be respected, unless it be clearly shown that they have exceeded their powers or have acted in manifest con fra ven (ion of law. (Hancock v. McKinney, 7 Tex. R., 384.) Acts done and rights justly acquired under such construction will not be disturbed.
By the 3Gth article of the law of 1834 settlers, after having received the 1 iiles .to their lands, wore authorized lo sell, the purchaser being- charged with the performance of the conditions. There is therefore nothing in the objection .that the grantee, in this case did not perform in person the condition of settlement and cultivation.
, The proof showed performance of the conditions of the grant. The instruction, therefore, respecting the right of any one hut the government to inquire into the non-performance of the conditions, whether correct or otherwise, was immaterial, and cannot afford a ground for reversing the judgment.
We are of opinion that there is no error in the judgment and that it he affirmed.
Judgment affirmed.