W. T. Blythe, Guardian, v. C. M. Houston et al.

1. Grant—Presumption—Innocent purchaser—Testimonio—Evidence.—By the XIVth Article of the Provisional Government of Texas, all land commissioners were ordered forthwith to cease their operations during the unsettled condition of the country. That article went into force on the 13th day of November, 1835, after which date any title issued by a commissioner was a nullity. The plaintiff, after taking depositions to prove the genuineness of the testimonio of a grant, which testimonio purported to have been

issued on the 15th of November, 1835, introduced on the trial the protocol of the grant or title of possession, issued by George W. Smyth, commissioner, with date as follows: "Given at the town of Nacogdoches, ——, A. D. 1835." The protocol showed the date of the application and the order of survey to be September 15, 1835, and the date of the field-notes and of the order that title issue, to be November 11, 1835. The genuineness of the testimonio was questioned under oath, and both the protocol and a translation of the testimonio were in evidence: *Held*—

1. PRESUMPTION IN FAVOR OF ACTS OF PUBLIC OFFICER.— That the suspicion which might grow out of the irregularity of the protocol in its date alone should not prevent the operation of the presumption that the commissioner who issued it acted in all respects in conformity to law.

2. SAME.—In the absence of any evidence of the date of a grant issued in 1835, the law would presume that the commissioner acted in the extension of title at a time when he might legally do so; and that the true date was prior to the closing of the land office, in the absence of evidence sufficient to overcome such presumption; and after the lapse of thirty-five years the evidence required to rebut the presumption must be full and satisfactory.

3. PRESUMPTION—INNOCENT PURCHASER.—In favor of innocent purchasers, the presumption of the regularity and validity of a grant will be so strengthened, by acquiesence and the lapse of time, as to stand until rebutted by satisfactory evidence.

4. EVIDENCE.—But this presumption could not prevail to validate a grant without date except "——, 1835," if the genuine testimonio of the grant showed that the title was extended after the close of the land office in 1835, unless it was shown by evidence that the testimonio was issued on a day subsequent to making the protocol.

5. PROTOCOL AND TESTIMONIO.—The making of the protocol and the issuance of the testimonio were ordinarily contemporaneous acts.

6. EVIDENCE—PRESUMPTION.—The statement of facts failed to show that what purported to be the original Spanish testimonio was ever read to the jury, but did show that what purported to be a translation thereof was read without objection, and that the Spanish document was attached as an exhibit to a deposition which was read, and in which it was referred to, and also that it was exhibited to a witness on the stand during his examination. The party who objected on appeal to the Spanish original being regarded in evidence, had himself asked an instruction on the trial, based on the hypothesis that the paper had been read:

*Held,* That under these circumstances the original Spanish testimonio must be regarded as having been in evidence.

7. TESTIMONIO—EVIDENCE.—The testimonio is a second original, and may be resorted to for the purpose of supplying the defects of the protocol.

8. EVIDENCE—CHARGE OF THE COURT.—The testimonio being in evidence, bearing a specific date showing the issuance of title after November 13, 1835, it was the duty of the court to submit to the jury a charge based on the hypothesis of its genuineness.

2. EXPERTS—EVIDENCE.—It is no objection to the deposition of a witness who translates in his evidence a Spanish document, that it had not at first been shown that the witness "was a Spanish scholar and competent to correctly translate the Spanish language into English," when his deposition disclosed the fact that he had once filled the post of Spanish translator in the General Land Office, and wrote and spoke the Spanish language.

3. CERTIFICATE OF ACKNOWLEDGMENT—NOTARY PUBLIC.—A certificate of acknowledgment of a notary public, beginning "The State of Texas, county of Hopkins," which recites the appearance of the parties before the "undersigned authority," and closes as follows, viz: "witness my hand and official seal, at Douglass, this 6th day of October, A. D. 1854, (signed) John B. Clute, Notary Public, N. C.," and in other respects formal, is good; the discrepancy between the county named in the outset and the initial letters appended to his signature is not of sufficient importance to invalidate the record.

4. EVIDENCE.—A plaintiff who relies on a protocol executed with no other date than "———, 1835," may prove the genuineness of the handwriting of the officer by whom the title purports to have been issued, and also by parol testimony, that a witness was present when the officer issued a grant to the grantee under whom plaintiff claims,—its location, size, or date not remembered; such evidence is admissible to remove any suspicion of the protocol growing out of the blank date.

APPEAL from Hopkins. Tried below before the Hon. W. H. Andrews.

The facts of the case will be found very fully stated in the opinion of the court, delivered in Ury *v.* Houston, 36 Tex., 265.

*Bennett, Ballinger & Bennett,* for appellant.

*King & Camp,* also for appellant.

No briefs for appellees have reached the reporters.

*William C. Loring,* for intervenor Bondies.—The following
are the principal authorities bearing upon the points involved
in this case, and relied on, and upon which it must be deter-
mined: Smith *v.* Townsend, Dallam, 571; Herndon *v.* Casi-
ano, 7 Tex., 323; Paschal *v.* Perez, 7 Tex., 349; Edwards
*v.* James; 7 Tex., 372, 373; Titus *v.* Kimbro, 8 Tex., 213, 214;
Hubert *v.* Bartlett, 9 Tex., 97; Watrous *v.* McGrew, 16 Tex.,
511, 512; Swift *v.* Herrera, 9 Tex., 279–280, 281; Wheeler
*v.* Moody, 9 Tex., 375, 376; Johnston *v.* Smith, 21 Tex., 722;
and especially see the argument of the court in the last case;
much of this decision directly bears upon the points involved
in the case before the court; Bowmer *v.* Hicks, 22 Tex., 155;
Nicholson *v.* Horton, 23 Tex., 50; Portis and Wife *v.* Hill
and Wife, 14 Tex., 69; this case refers to the law governing
partitions; Howard *v.* Colquhoun, 28 Tex., 140, a leading
case on presumptions of the genuineness of Spanish titles.

*John L. Henry,* for intervenors Yongue and wife.—In sup-
port of the proposition that appellant was estopped by his
affidavit and plea impeaching the *testimonio* as a forgery, he
referred to the following authorities: Portis *v.* Hill, 30 Tex.,
561; Sprigg *v.* The Bank of Mount Pleasant, 10 Pet., 264;
Bouv. Law Dict., title "ESTOPPEL IN PLEADING;" 4 Kent,
269, 8th ed.; 3 C. & H.'s Notes to Phillips's Ev., part I, p. 366;
1 Greenl. Ev., secs. 22, 206, 210.

In support of the proposition that the testimonio could
not have been read in evidence without proof of its exist-
ence, the following authorities were referred to: Wood *v.*
Welder, 42 Tex., 408, and authorities there cited.

In support of the third proposition, that the testimonio
could not be admitted or treated as evidence until the eras-
ures and interlineations were explained, he referred to 1
Greenleaf on Evidence, 12th ed., p. 603, sec. 564.

Appellant himself charged, by solemn plea, under oath,

which was never denied, that material alterations in the instrument were made, subsequent to its being signed, by filling blanks. This uncontested fact is fatal to the instrument. (Park *v.* Glover, 23 Tex., 472.)

If the testimonio was not in evidence, the court correctly refused to charge as if it was. (Hampton *v.* Dean, 4 Tex., 455; McGreal *v.* Wilson, 9 Tex., 428; Lee *v.* Hamilton, 12 Tex., 418; Earle *v.* Thomas, 14 Tex., 592; Andrews *v.* Smithwick, 20 Tex., 118; Dodd *v.* Arnold, 28 Tex., 101.)

The charge asked and refused by the court is peculiar in this respect: it charges that the effect of the testimonio "offered" in evidence was, &c. It does not refer to it as having been read in evidence, and, as the statement of facts fails to show that such a paper was read, we are justified in assuming that it was not, and that the court, after excluding it, was requested to give it the same effect as if admitted.

Again, this charge assumes that a testimonio was issued by the commissioner, Smythe, and instructs the jury, not to find whether the copies read to them are copies of it, but whether it was the same as some other paper "offered," but never read to them, and about which they could know nothing.

The record certainly indicates that, if the court erred at all, it was in not permitting the testimonio to be introduced in evidence; that error certainly could not be cured by his charging it in evidence.

In Yarborough *v.* Tate, 14 Tex., 483, Earle *v.* Thomas, 14 Tex., 583, a charge upon the effect of the testimonio, when it was not in evidence, we understand to be strongly reprobated. (Hardy *v.* DeLeon, 5 Tex., 211.)

Instructions must be referred to facts in evidence; and if they are correct in application to such facts, that is sufficient. (Case *v.* Jennings, 17 Tex., 661; Norvell *v.* Oury, 13 Tex., 32; Thompson *v.* Shannon, 9 Tex., 537; Davis *v.* Loftin, 6 Tex., 489, 500; Hatch *v.* Garza, 22 Tex., 187; Scranton *v.* Tilley, 16 Tex., 194.)

If it was proper for the court in this case to have charged the jury at all upon the effect of the testimonio, and if it can be held that proof of its execution was addressed to the jury, and not to the judge, still the instrument itself should have been submitted to the jury in connection with the evidence of its execution, and no charge as to its effect would then have been correct, except in connection with a charge of what the law required to be proved to establish its execution. The jury, uninstructed, no more knew the law of proof of the execution of the instrument than they knew the law of any other fact.

We submit that, saying nothing of the impeaching affidavit of appellant, (and we don't see how it can be overlooked,) there can be no pretense that the execution of the testimonio was established by the evidence indicated to be necessary in the cases of Beaty *v*. Whitaker, 23 Tex., 526, 528; DeLeon *v*. White, 9 Tex., 600.

But treating the plea of defendant as an affidavit under the statute, what was its effect? Under its operation the plaintiff could have only had the benefit of the testimonio, by first proving its execution and genuineness and then reading it or introducing it in evidence. Certainly, when in the exigency of the case it became necessary for the defendant to use the instrument so attacked by him, there could not be any relaxation of the rule in favor of himself, by which his affidavit was less binding on him than on his adversary.

In Edwards *v*. James, 7 Tex., 373, the testimonio, it appears, had been duly recorded, while the one in this case had not. That had been filed under article 3716, Paschal's Dig. An affidavit under that section had been made impeaching it as a forgery. It was not allowed to be treated as evidence until not only the signature of the officer who executed and the persons who witnessed it had been proved, but the instrument itself thus proved had been introduced as evidence.

GOULD, ASSOCIATE JUSTICE.—In the opinion of Justice

Walker, delivered on a former appeal of this cause, (Ury *v.* Houston, 36 Tex., 265,) will be found a sufficient statement of the original pleadings, showing that the plaintiffs, claiming an undivided interest in the Lovick P. Dikes headright league and labor of land, brought their suit to recover the same from alleged trespassers, and also to have partition with other joint owners. After the reversal of the case, George Bondies and Rosana Yongue, joined by her husband Samuel, intervened separately, claiming to be part owners of the land, and seeking to have their respective interests allotted to them in the partition. In an amended petition, the plaintiffs allege that plaintiff Nancy Houston is "the legal and equitable owner of an undivided interest of nineteen hundred and eight and a half acres" of the grant.

Affidavit was made by defendant, charging that the "pretended title, purporting to have been issued by George W. Smythe, special commissioner for the Government of Coahuila and Texas, to one Lovick P. Dikes, for one league and labor of land," was "fraudulent and void; that he believes and charges that the signature of said George W. Smythe, which appears to have been signed to said title as commissioner as aforesaid, is a forgery, and that the said title or testimonio was never signed by the said Smythe." Shortly after the filing of this affidavit, which appears to us simply an affidavit under the statute regulating the admission in evidence of recorded deeds, and not a plea of *non est factum,* (Paschal's Dig., art. 3714,) plaintiffs filed interrogatories to J. M. Long, for the purpose of proving the signature of Smythe to a document then on file amongst the papers of the case, and purporting to be a testimonio of the Lovick P. Dikes grant. On the trial of the case, however, the plaintiffs relied on a certified translation of the protocol, from the General Land Office, and contended that the paper purporting to be a testimonio was a forgery; whilst the defendant maintained that it was genuine, and that it established the fact that the Lovick P. Dikes grant was issued on the 15th of November, 1835, two

days after the closing of the land office, and that it was therefore illegal and void.

The land office translation of the protocol appears to have been introduced without objection, which showed the date of the application and of the order of survey to be September 15, 1835; the date of the field-notes and of the order that title issue to be November 11, 1835; and, finally, the date of the grant or title of possession to be as follows: "Given at the town of Nacogdoches, the ——, A. D. 1835." The leading question on the trial undoubtedly was, as to the date of this grant, and, as bearing on that question, whether there was a genuine testimonio bearing date November 15, 1835, and in which the date of the protocol does not appear to be blank, but to be also November 15, 1835. The trial resulted in a verdict for the plaintiffs, ascertaining also the respective interests of the plaintiff and intervenors, and the judgment was that the plaintiffs recover the land of the defendant Blythe, and also that the land be partitioned between the plaintiffs and the other joint owners.

The case comes up on the appeal of defendant Blythe; and in order to present intelligibly the questions involved, it becomes necessary to state a considerable part of the evidence.

After introducing the certified translation of the protocol, the plaintiffs also read the deposition of E. M. Pease, to the effect that he was acquainted with the handwriting of George W. Smythe, and that he had examined what purported to be a title, written in the Spanish language, for one league and labor of land, in favor of Lovick P. Dikes, issued by Smythe, as commissioner of the State of Coahuila and Texas, which was then in the General Land Office of the State of Texas, at the city of Austin; that he found the signature of George W. Smythe, as commissioner, appeared three times to different parts of said title, each and all of which he believed to be in Smythe's handwriting, and genuine.

Plaintiffs also read the deposition of A. Manchaca, who

testified that he was present in Smythe's office, at Nacogdoches, when he issued a grant of land to Lovick P. Dikes, but did not know for what amount. He did not know the date of said grant, nor that it was complete.

Both of these depositions were objected to, on the ground, substantially, that the title was not identified as the one in question, or as being for the land in controversy. These objections were properly overruled. It is to be remarked that these depositions were used, not for the purpose of proving up the execution of the protocol, for a certified translation of that was already in evidence; the evidence was probably taken to remove any suspicion as to the protocol, growing out of the blank date. It was pertinent and proper.

It was in evidence by the surveyor of Hopkins county that the Lovick P. Dikes league and labor was delineated on the official map of that county, marked thus: "Lovick P. Dikes, T., November 11, 1835," and that the survey had been respected as valid until within about two years of the trial. It was also in evidence that in 1836, Lovick P. Dikes lived in Nacogdoches county, Texas, was a married man, and, after conveying half his league and labor to J. M. Henry, died, leaving a wife and children. The plaintiffs deraigned title through conveyances connecting with the title of the widow, after her marriage to one Stoval, and two of the children.

The intervenors, Bondies and Yongue, each claimed under the conveyance to J. M. Henry.

The defendant Blythe read the deposition of David Whiting, Spanish translator in the General Land Office, giving a translation of an Exhibit A, attached to the interrogatories, purporting to be the testimonio of a grant to Lovick P. Dikes. This translation was read to the jury, and in it the date of the title and of the testimonio are both given as November 15, 1835. Defendant also read the deposition of J. M. Long, taken apparently in response to interrogatories propounded by plaintiff, interrogating him as to the genuineness of George W. Smythe's signature to an Exhibit D, purporting to be a

Spanish testimonio of the Dikes grant, in reference to which he testified that he had known Smythe from about 1843, and knew his signature, and that he believed his signature to the testimonio to be genuine.

Defendant also introduced C. Payne, attorney for plaintiff, who testified "that the paper shown him, marked Exhibit D, and referred to in the answer of witness Long, is the paper that was attached by him to interrogatories propounded to witness Long; that it was returned with said interrogatories. Does not know how the paper got on file in this case."

It was in evidence that the distance from Nacogdoches to the land was about 160 or 180 miles.

In rebuttal, the plaintiffs read a portion of Blythe's affidavit, before alluded to, as to his belief that Smythe's signature to the title, or testimonio, was a forgery, and also read the deposition of A. Hotchkiss, taken at the instance of defendant Blythe, interrogating him as to the genuineness of Smythe's signature to the testimonio, which testimonio he is requested to attach to his answers, and which he testifies that he does attach to his answers. This witness testifies that he had known Smythe from 1833; was employed by him as clerk in his office as commissioner, and knew his handwriting well; that George W. Smythe uniformly spelled his name Smythe, and not as it appears in said testimonio, Smith; and that his signature to the testimonio is not genuine. He testifies, also, that the two last lines of the testimonio are in a different handwriting from the body of the instrument. This witness also gives a translation of the testimonio, which was read to the jury by the plaintiff, and which differs from that given by Whiting, in that the date of the title is (perhaps by mistake in copying) November 9th, 1835, and the testimonio is without date.

At the request of plaintiffs, the court instructed the jury that, "should you believe that said protocol is without date, in the absence of evidence to the contrary, the law raises the presumption that it was issued on or before the 13th day of

November, 1835, and that it is a valid grant, and it devolves upon the defendant to refute said presumption in favor of the validity of the grant, by showing, by proof, that said grant was not made until after the 13th November, 1835; and if you believe that the paper in Spanish, purporting to be the testimonio issued by George W. Smythe, is not a genuine copy of the protocol, or if you believe that it was not executed by said George W. Smythe, but that it is a forgery, then it should not be considered by you for any purpose, and does not tend to prove any fact, although the plaintiffs in this cause may at one time have believed and treated it as genuine, and may at one time have attempted to prove and use it as a muniment of their title." The jury are also instructed, at the request of the plaintiff, "that after the lapse of thirty-five years, when the land has passed into the hands of innocent purchasers," the presumption of the legality of the acts of the officer is greatly increased, and that "their illegality must be shown by full and satisfactory proof." The defendant asked, and the court refused to give, an instruction concluding as follows: "If you are satisfied from the evidence that this testimonio, offered in evidence, is the same issued by the commissioner and delivered to Lovick P. Dikes as the evidence of his title, and you shall also believe from the evidence that said testimonio was issued on the 15th day of November, 1835, and you further believe that the title under which plaintiffs claim is without date as to the day of the month, you will find for defendant Blythe."

There was a motion for new trial, alleging, amongst other grounds, that the charge of the court "entirely took from the jury the consideration of the evidence, offered by defendant Blythe, of the time when the grant was made by George W. Smythe to Lovick P. Dikes, and was indirectly a charge on the weight of evidence." One of the errors assigned is, that the "court erred in overruling the motion for new trial, for the reasons set forth in the motion, to which reference is made;" and another assignment is to the action of the court

in refusing the instruction just quoted. These assignments are sufficient to require us to consider whether the charge as given was objectionable on the ground stated, and whether the charge asked was properly refused.

The charge must be considered with reference to the fact that the translation of the protocol was in evidence, apparently without objection, and further, that if the genuineness of the protocol was questioned, there was evidence tending to show that it was in fact issued by the commissioner George W. Smythe. Under these circumstances, we do not think that the suspicion which might grow out of the irregularity of the protocol, in its date, would prevent the operation of the presumption that the commissioner who issued it "acted in all respects in conformity to law." (Jenkins v. Chambers, 9 Tex., 167; Goode v. M'Queen's Heirs, 3 Tex., 258.)

If there was no evidence of its actual date, the law would presume that the commissioner acted at a time when he might legally do so, and that the true date was prior to the closing of the land office; and if there was evidence as to the true date, it was properly required to be sufficient to overcome this presumption. To this extent the charge seems to us to state the law correctly.

Nor do we find any error of law in the proposition, that after the lapse of thirty-five years, and in favor of innocent purchasers, the evidence required to rebut this presumption must be full and satisfactory. There would seem to be a sound public policy in discouraging attacks on grants which have long been acquiesced in and which have passed into the hands of innocent third parties, and in requiring that, when they are sought to be impeached by parol evidence, the evidence shall be of a satisfactory character. The opinion of Justice Wheeler, in the case of Johnston v. Smith, 21 Tex., 722, and of Justice Smith, in Howard v. Colquhoun, 28 Tex., 135, tends strongly to support the proposition that, in favor of innocent purchasers, the presumption of the regularity and validity of a grant, will be so strengthened by acquiescence

and the lapse of time, as to stand until rebutted by satisfactory evidence.

But if the proposition be conceded to be correct, it by no means follows that it was proper to give it in charge in a case where the evidence, if there was any, of the date of the grant, consisted in a duplicated original of the grant itself, which was in fact, when established, as satisfactory evidence of the true date as if it had been given in the protocol. That the testimonio is a second original, and may be used to supply the defects of the protocol, is the established doctrine in this court. (Titus v. Kimbro, 8 Tex., 210; Chambers v. Fisk, 22 Tex., 535; Smith v. Townsend, Dallam, 572; 7 Tex., 332.) It follows that, if there was before the jury a genuine testimonio of the Dikes grant, it was the duty of the court, when requested to do so, to instruct the jury that the date given in the testimonio was to be taken as the true date, unless there was evidence to the contrary. If the true construction of the charge asked by defendant be, that the date of the issuance of the testimonio (without reference to the correspondence of that date with the date of the protocol, as recited in the testimonio) was the date with which the blank in the protocol was to be supplied, we are of the opinion that it was still a correct charge, unless there was evidence tending to show that the testimonio was issued on a subsequent day. We see no such evidence in the record. The issuance of the protocol and of the testimonio were properly and ordinarily contemporaneous acts. (Herndon v. Casiano, 7 Tex., 332.) If there was evidence entitling defendant to have the existence and date of a genuine testimonio passed upon by the jury, it was error in the court to refuse the instruction.

It is contended that the record does not show that any testimonio was read to the jury; and in truth the statement of facts does not show that the Spanish document, purporting to be a testimonio, was ever read in evidence, though Payne's testimony does show that it was produced and exhibited to

him on the trial. Two translations of that instrument, however, were read in evidence, and one of those was introduced by the plaintiffs. The record abundantly shows that what purported to be the testimonio was on file amongst the papers. Hotchkiss testifies that it is appended to his answers, marked Exhibit A; and there seems to be authority for holding that an exhibit so attached may be regarded as in evidence, although not read to the jury. (Pridgen *v*. Hill, 12 Tex., 374.) The plaintiffs themselves asked, and the court gave, an instruction to the jury as to their course, if they believed "the paper in Spanish, purporting to be the testimonio issued by George W. Smythe," not to be a genuine copy of the protocol. Under all these circumstances, we conclude that the purported testimonio was so far in evidence; and the evidence as to its genuineness was so far conflicting, as to require the court, when requested to do so, to submit to the jury a charge based on the hypothesis of its genuineness. Under this view of the evidence, the charge of the court as given was objectionable, and the refusal of the charge asked was erroneous, and requires a reversal of the cause.

There are other questions in the case on which it is proper that we should pass.

The defendant offered the deposition of one Brown, who testified that some years before he held the office of translator (Spanish) in the General Land Office; that he spoke and wrote the Spanish language; and he attached to his answers a translation of the purported testimonio, certified by him to be correct. The objection taken and sustained to these depositions and this translation was, that his depositions did not show that he was a Spanish scholar, and competent to correctly translate the Spanish language into the English language. We think that Brown's depositions sufficiently showed his competency as a translator, and that the objection taken should have been overruled. As the case is to be reversed on other grounds, it is unnecessary to say whether this was a material error or not.

The plaintiffs, in making out their title, offered in evidence a certified copy from the county records of a deed from Stoval and wife to J. H. Sparks and C. D. McKnight, which was objected to, on the ground that the certificate of acknowledgment did not show of what county the officer giving the certificate was notary public, nor that he was a notary public at the time said acknowledgment was taken. The certificate commences: "The State of Texas, county of Hopkins," recites the appearance of the parties before the "undersigned authority," and winds up: "Witness my hand and official seal, at Douglass, this 6th day of October, A. D. 1854. (Signed,) John R. Clute, Notary Public, N. C."

This objection was, we think, properly overruled. The case of McDonald v. Morgan, 27 Tex., 504, is nearly in point as to the sufficiency of the signature, which, it must be assumed, was authenticated with the official seal of the notary, showing the words "Notary Public, County of ———, Texas." (Paschal's Dig., art. 4692.) The discrepancy between the county named in the outset and the letters designating his county appended to the signature might easily be accounted for, and certainly was not of sufficient importance to invalidate the record.

In reversing the case, attention is called to the averments of the last amended petition, alleging the title to be in Nancy Houston, whilst the evidence as to most, if not all, of the land claimed by plaintiffs shows it to be community property.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.